IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 16-10131-EFM

ERIK A. TERRAZAS,

    *Defendant.*

**MEMORANDUM AND ORDER**

Erik Terrazas pleaded guilty to possessing a stolen firearm, and this Court sentenced him to 60 months in prison for that crime. This matter comes before the Court on Terrazas' Motion collaterally attacking that sentence. For the reasons explained below, Terrazas' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 by a Person in Federal Custody (Doc. 40) is denied. Because review of Terrazas' Motion and the files and record of the case conclusively show that he is not entitled to relief under § 2255, the Court denies the Motion without an evidentiary hearing.

    **I.**    **Factual and Procedural Background**

Erik Terrazas is serving a 60-month sentence in federal prison for possession of a stolen firearm. The facts surrounding Terrazas' judgment of conviction are as follows. In July 2016, Detective Chad Graham of the Sedgwick County Sheriff's Office received a tip regarding the

whereabouts of some recently stolen property. The stolen property—a four-wheel vehicle and a tool box—was purported to be stored in the garage of a Wichita, Kansas residence. Graham contacted the residence's owner, who informed the detective that the residence was being rented to his ex-daughter in law. The owner agreed to accompany Graham to the residence to inquire into the stolen property. When the pair arrived at the residence, they found three individuals inside the home, including Terrazas who was living in the residence's basement at the time. Terrazas had an active warrant for his arrest in Sedgwick County for a traffic violation and was taken into custody.

Graham acquired written consent from the residence's occupant to search the garage, and the search revealed the stolen property. Law enforcement then used that information to obtain a warrant to search the entire residence. During the search of the home, officers found approximately 67 grams of methamphetamine in a bag that was identified as belonging to Terrazas; officers also found several stolen firearms.

On September 13, 2016, a grand jury indicted Terrazas on five counts relating to possession of methamphetamine with intent to distribute, possession of a stolen firearm, and being a felon in possession of a firearm. Terrazas entered into a plea agreement in which he agreed to plead guilty to one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(j). In exchange for Terrazas' guilty plea, the Government agreed to dismiss the remaining counts, to not file any additional charges, to recommend a sentence on the low end of the Federal Guidelines range, and to recommend a reduction of Terrazas' sentence because he acccepted responsibility for his crime.

The plea agreement also stated that Terrazas understood that his sentence would be determined solely by the Court, that he faced a maximum prison sentence of ten years, and that the Government made no promises or representations as to what sentence he would receive. On

February 28, 2017, Terrazas entered his plea of guilty with the Court. During this hearing, the Court addressed these details with Terrazas:

> THE COURT: "I'm required to advise you that, in fact, the law provides that the penalty for being found guilty of this offense is a sentence of up to ten years in prison, a fine of up to $250,000, you could receive up to three years of supervised release, and you'd be required to pay a hundred dollar mandatory special assessment. You understand that?"
>
> THE DEFENDANT: "I do, yes, sir."

The plea agreement also included a provision limiting Terrazas' right to appeal or collaterally attack his eventual sentence. Paragraph 10 of the plea agreement stated as follows:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. *The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b).* In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). (Emphasis added).

The Court addressed the waiver provision with Terrazas at the February 28 hearing.

> THE COURT: "All right. Let's go to paragraph 10, which explains that the law gives you a variety of rights to appeal in cases like this. [] You can appeal your prosecution of this case or your conviction of it. You can appeal the sentence you receive or how that sentence was calculated. You can appeal any terms and conditions of your supervised release, as well as any violation of those terms and conditions you might later be found to have committed. You can even, after this case is over, bring a collateral attack against what we did here by filing a new motion or a new case in which you charge that we didn't properly follow the law or the rules in this case and that, therefore, you shouldn't be held to any judgment

-3-

or sentence issued against you in this case. But in paragraph 10, you're pretty much waiving all of those appeal rights. By and large, unless I were to give you a sentence above the top end of the guideline or unless the United States were to file its own appeal, other than in those cases you're otherwise pretty much waiving any appeal rights you would otherwise have. Do you understand that, sir?"

THE DEFENDANT: "Yes, sir."

THE COURT: "And are you agreeing to do that?"

THE DEFENDANT: "I am, yes, sir."

In the plea agreement Terrazas also swore that he acknowledged "that he is entering into this Plea Agreement and is pleading guilty because he is guilty." He further acknowledged "that he is entering his guilty plea freely, voluntarily, and knowingly." At the February 28 hearing, the Court discussed this matter with Terrazas:

> THE COURT: "Finally, paragraph 15, the last paragraph in this plea agreement, says that you acknowledge that you're entering into this plea agreement and you're pleading guilty because you are guilty, and that you're doing that freely and voluntarily. Is that a correct statement, sir?"
>
> THE DEFENDANT: "Yes, sir."
>
> THE COURT: "Other than the promises made to you in this plea agreement which I've already discussed, has anyone made any other promises to you to persuade you to plead guilty?"
>
> THE DEFENDANT: "No, sir."
>
> THE COURT: "Has anyone made any threats against you to make you enter this plea?"
>
> THE DEFENDANT: "No, sir."
>
> THE COURT: "Has anyone used or tried to use any physical force or violence against you to make you enter this plea?"
>
> THE DEFENDANT: "No, sir."

On May 22, 2017, the Court held Terrazas' sentencing hearing. Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report, which presented Terrazas at an Offense Level 21 and Criminal History Category IV, with an advisory guidelines range of 57–71 months. The Court sentenced Terrazas to a within guideline range of 60 months incarceration, followed by a period of supervised release.

Terrazas filed this present Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Terrazas' Motion raises two issues. First, he claims that his sentencing guideline range was miscalculated under U.S.S.G. § 2K2.1. Second, he claims ineffective assistance of counsel. Terrazas' second claim is largely tied to his first in that he argues that his counsel should have been aware that his guideline range was improperly calculated and the failure to object to the calculation was deficient representation. Terrazas requests the Court reverse his conviction or resentence him with a four-level reduction to his Offense Level. In response, the Government argues that Terrazas waived his right to collaterally attack his sentence and that his motion should therefore be denied for violating the terms of the plea agreement.

## II. Legal Standard

Under 28 U.S.C. § 2255(a),

> a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

the judge who receives the motion must properly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[1] The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[3]

### III.     Analysis

**A.     Waiver of Collateral Rights**

Before the Court can consider the merits of Terrazas' collateral attack against his sentence, it must first determine whether Terrazas waived his right to bring such a claim. Plea bargaining serves an important role in the criminal justice system and its benefits are felt by defendants, the government, and society at large.[4] For that reason, the law generally requires courts to enforce the terms of a plea agreement, including waivers of post-conviction rights to appeal and collaterally

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[3] *See id*. (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[4] *United States v. Hahn*, 359 F.3d 1315, 1318 (10th Cir. 2004).

attack a defendant's sentence.[5] But not every plea agreement waiver is enforceable. The Tenth Circuit adopted a three-prong test to determine the enforceability of a plea agreement waiver. Under this test the Court must consider: " '(1) whether the disputed claim falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.' "[6] Applying this test to Terrazas' claim, the Court concludes that Terrazas waived his right to collaterally attack his sentence.

1.  *Scope of the waiver*

The first question is whether Terrazas' present Motion is within the scope of his plea agreement waiver. Plea agreements are governed by ordinary contract principles.[7] Accordingly, the touchstone of the Court's analysis under the first prong is to evaluate the plea agreement's plain language.[8] Paragraph 10 of the plea agreement stated, in relevant part:

> The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b ).

Terrazas' § 2255 Motion unquestionably falls within the scope of the plea agreement's waiver provision. Terrazas broadly agreed to waive *any* right to challenge his sentence, or the

---

[5] *Id.*; *see also United States v. Falcon-Sanchez*, 416 F. App'x 728, 729–30 (10th Cir. 2011) (citing *United States v. Cockerham,* 237 F.3d 1179, 1183 (10th Cir. 2001)).

[6] *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (quoting *Hahn*, 359 F.3d at 1325) (alterations omitted).

[7] *United States v. Kutilek*, 260 F. App'x 139, 144 (10th Cir. 2008) (citing *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004)).

[8] *Id.* at 143–44 (citing *Anderson*, 374 F.3d at 957–58).

-7-

manner in which it was determined, by *any* form of collateral attack. Furthermore, the plea agreement specifically named § 2255 motions as waived.[9] Terrazas' plea agreement reserved no collateral rights other than the limitations imposed by the Tenth Circuit in *United States v. Cockerham*.[10]

In *Cockerham*, the Tenth Circuit held "that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims *challenging the validity of the plea or the waiver*."[11] "Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."[12] Whether a claim of ineffective assistance of counsel attacks the validity of the plea or the waiver must be addressed on a case-by-case basis.[13]

Here, Terrazas generally claims that his counsel failed to hold the Government to "adversarial testing." In his § 2255 Motion, Terrazas appears to argue that his counsel should have objected to the calculation of his Base Offense Level under § 2K2.1. Terrazas additionally argues that his counsel failed to research cases "that were being argued at the time prior to him being sentenced" that could have impacted his sentence, and that his counsel should have requested Terrazas' sentence be continued pending resolution of those cases. To the extent that Terrazas'

---

[9] *See Viera*, 674 F.3d at 1217–18 ("[Defendant's] § 2255 motion falls within the scope of the plea agreement's waiver provision. The waiver not only states that [Defendant] waives his rights to collaterally attack but expressly names § 2255 motions as waived. [] Even if the waiver had only mentioned collateral attack, we would find [Defendant's] § 2255 motion to be within the scope of the waiver.").

[10] 237 F.3d 1179 (10th Cir. 2001).

[11] *Id.* at 1187 (emphasis added).

[12] *Id.*

[13] *Id.* at 1188.

claims relate to his counsel's actions—or inaction—at his sentencing, his claims do not attack the validity of the plea or the waiver and therefore are not authorized by the exceptions recognized in *Cockerham*.[14]

In Terrazas' Reply, however, he suggests that his counsel provided ineffective counsel at the plea-bargaining stage, stating:

> A lawyer's failure to learn the relevancy of the facts and make an estimate of the sentence constitutes deficient performance. In the plea-bargaining context, a reasonable lawyer must attempt to learn all of the relevant facts of the case, make an estimate of the likely sentence and communicate the results of the analysis to the client before allowing the client to plead guilty.

To the extent that Terrazas' ineffective assistance of counsel claim can be construed as attacking the validity of the plea agreement, his claim cannot be waived. That being said, Terrazas' claim does not rise to the level of ineffective assistance of counsel that would undermine the validity of his plea or the waiver.[15] Additionally, when questioned by the Court at his plea hearing, Terrazas swore that he understood that the "law provides that the penalty for being found guilty of [his] offense is a sentence of up to ten years in prison, a fine of up to $250,000, [he] could receive up to three years of supervised release, and [he would] be required to pay a hundred dollar mandatory special assessment." Terrazas also swore that he understood that his sentence would be determined by the Court and that nobody could promise him what sentence he would receive.[16]

---

[14] *See Kutilek*, 260 F. App'x at 148 ("[I]t is ineffective assistance of counsel in connection with the negotiation of the waiver that can render the waiver invalid. Ineffectiveness in connection with the sentencing, which took place some eleven weeks after the plea was taken and the agreement signed, cannot.").

[15] *See United States v. Gordon*, 4 F.3d 1567, 1570–71 (10th Cir. 1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.") (citations omitted).

[16] *Id.* at 1571 ("Prior to accepting his guilty plea the district court explained that the court's final calculation of Defendant's sentence may differ from any calculation made by his attorney, and the court also explained that in computing Defendant's sentence, 'the court can and will consider all available information including factual data relating to any counts dismissed or about to be dismissed.' Given the fact that Defendant pleaded guilty even after

So, even assuming Terrazas' counsel failed to make an informed prediction about what sentence Terrazas would receive, that would not invalidate his plea or the waiver.

In sum, the Court concludes that Terrazas' claim challenging the calculation of his Base Offense Level under § 2K2.1 is within the scope of the plea agreement waiver. Furthermore, his claims relating to his counsel's actions at sentencing are also within the scope of the waiver. Lastly, to the extent that Terrazas' claims can be construed as attacking the validity of his plea or the waiver, his claims do not rise to the level of deficient legal representation that would warrant vacating his sentence.

### 2. *Knowing and voluntary waiver*

Next, the Court considers whether Terrazas knowingly and voluntarily waived his right to collaterally attack his sentence, keeping in mind that the burden resides with Terrazas to show that his waiver was not made knowingly and voluntarily.[17] The Court considers two factors in assessing the voluntariness of Terrazas' waiver.[18] First, the Court examines whether the plea agreements states that Terrazas entered the plea agreement knowingly and voluntarily; and second, the Court considers whether there was an adequate Federal Rule of Criminal Procedure 11 colloquy addressing the matter before Terrazas entered his guilty plea.[19]

Here, Terrazas affirmed in his plea agreement that he "enter[ed] his guilty plea freely, voluntarily, and knowingly." And the Court discussed this with Terrazas at the plea hearing, where

---

being so informed by the court, his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice.") (internal citations omitted).

[17] *United States v. Smith,* 500 F.3d 1206, 1210 (10th Cir. 2007).

[18] *Id.* at 1210–11.

[19] *Id.*

Terrazas confirmed that he was entering his guilty plea because he was guilty and that his plea was given freely and voluntarily. Terrazas also swore that he understood the consequences of entering the plea agreement: that he faced a potential ten-year sentence, that the Court alone would decide the length of his sentence, and that he was waiving the right to collaterally attack his sentence or the manner in which it was determined. Accordingly, the Court is satisfied that Terrazas entered his plea knowingly and voluntarily.

### 3. *Miscarriage of justice*

Under the third prong, the Court must consider whether enforcing the waiver will result in a miscarriage of justice. A miscarriage of justice occurs only under the four following circumstances: (1) "where the district court relied on an impermissible factor such as race," (2) "where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid," (3) "where the sentence exceeds the statutory maximum," or (4) "where the waiver is otherwise unlawful."[20] "To be otherwise unlawful, an error must seriously affect the fairness, integrity or public reputation of judicial proceedings."[21]

Nothing in Terrazas' Motion suggests that the first three circumstances are relevant. Terrazas does not contend that the Court relied on an impermissible factor such as race. Although Terrazas states that his counsel was ineffective at the plea-bargaining stage, as discussed above his accusations do not rise to the level of constitutionally deficient representation, and he presents no facts that his counsel was ineffective in negotiating the plea agreement waiver specifically. And

---

[20] *Id.* at 1212 (citing *Hahn*, 359 F.3d at 1327); *see also United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011) (recognizing that this is an exclusive list).

[21] *Smith,* 500 F.3d at 1212 (citations, alterations, and quotations omitted).

Terrazas' five-year sentence did not exceed the ten-year statutory maximum applicable to his crime.

Terrazas does argue, under the fourth circumstance, that the alleged miscalculation of his sentence guideline range "seriously affected the fairness, integrity, or public reputation of judicial proceedings," making his waiver unlawful. But this misunderstands the miscarriage of justice exception. The Tenth Circuit has explained that "the exception for an unlawful waiver looks to whether the *waiver* is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error."[22] Indeed, "[t]o allow alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive."[23] The Tenth Circuit has repeatedly rejected the exact line of argument upon which Terrazas relies.[24] The Court determines that enforcing Terrazas' waiver would not result in a miscarriage of justice and that it should be enforced. Terrazas is therefore barred from bringing his present Motion and it is accordingly dismissed.[25]

---

[22] *United States v. Chaidez-Guerrero*, 665 F. App'x 723, 725–26 (10th Cir. 2016) (citation and quotation omitted).

[23] *Id.*; *see also United States v. Abston*, 304 F. App'x 701, 706 (10th Cir. 2008) ("[W]hile [the defendant] contends the district court committed error by applying certain enhancements, this is the very type of error we will not consider in determining whether a waiver is unlawful.").

[24] *See Chaidez-Guerrero*, 665 F. App'x at 725–26; *United States v. Herrera-Zamora*, 521 F. App'x 714, 716 (10th Cir. 2013); *Polly*, 630 F.3d at 1001–02; *Abston*, 304 F. App'x at 706; *Smith,* 500 F.3d at 1212.

[25] As a final matter, Terrazas cites the Supreme Court's ruling in *Class v. United States*, 138 S. Ct. 798 (2018) to support the contention that constitutional defects can outweigh a waiver. But *Class* is inapplicable to Terrazas' situation. The issue in *Class* was whether a defendant, by virtue of pleading guilty, waived his right to appeal his conviction on the ground that the statute of conviction violated the Constitution. Although the defendant in *Class* signed a plea agreement that waived certain rights, the waived rights did not include those exercised by the defendant. Contrary to Terrazas' position, "a criminal defendant may waive many fundamental procedural and substantive rights, both constitutional and statutory. . . . The very *purpose* of a plea agreement is to secure a waiver of the defendant's rights." *Chaidez-Guerrero*, 665 F. App'x at 726.

B.     **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the defendant. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[26] A defendant satisfies this burden if " 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.' "[27] Because reasonable jurists would not find the Court's assessment of the enforceability of Terrazas' waiver debatable or wrong, a certificate of appealability should not be issued.

**IT IS THEREFORE ORDERED** that Erik Terrazas' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 by a Person in Federal Custody (Doc. 40) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 16th day of April, 2019.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[26] 28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA. See 28 U.S.C. § 2253(c)(1).

[27] *Saiz v Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v Dretke*, 524 U.S. 274, 282 (2004)).